FILED
13 MAR 29 PM 3:38
DEPUTY

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ENDURANCE AMERICAN SPECIALITY INSURANCE COMPANY,<br><br>Plaintiff,<br>vs.<br><br>WFP SECURITIES CORPORATION; WFP HOLDINGS, INC., et al.,<br><br>Defendants. | CASE NO. 11cv2611-JAH(KSC)<br><br>ORDER DENYING PLAINTIFF'S MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL<br><br>[Doc. No. 76.] |

Before the Court is defendants' Motion to Disqualify Plaintiff's Counsel. [Doc. No. 76.] In their Motion, defendants seek an order disqualifying Attorney Phillip Hosp and his law firm, Locke Lord, LLP, from any further representation of plaintiff in this action. Defendants argue that Mr. Hosp and Locke Lord, LLP should be disqualified from representing plaintiff in this action, because Mr. Hosp improperly obtained defendants' confidential and privileged documents. Defendants also seeks an Order removing certain documents from the Court's record and excluding them from use as evidence in this action. In addition, defendants want the Court to require Mr. Hosp and Locke Lord, LLP to return any documents that were not obtained through proper channels and to fully disclose how they were obtained. For the reasons outlined below, this Court finds that defendants' Motion to Disqualify Counsel must be DENIED.

/ / /

***Background and Procedural History***

This is the second of two insurance coverage actions that plaintiff Endurance American Specialty Insurance Company ("Endurance") has filed against defendants WFP Securities Corporation, a licensed broker/dealer, and related entities and individual securities representatives and financial advisors (collectively, WFP). Both actions involve the same insurance policy and insurance coverage for the same or similar underlying claims against the WFP defendants. The following is a brief summary of the relevant terms of the subject insurance policy, the underlying claims against WFP, the allegations in the two coverage actions, and the circumstances leading to the instant Motion.

***A. The Insurance Policy.***

On August 14, 2009, Endurance issued a professional liability insurance policy to defendant WFP Securities Corporation ("WFP") for the policy period June 1, 2009 to June 1, 2010 with a limit on liability of $1 million per claim and in the aggregate, with a self-insured retention ("SIR") of $50,000. The policy provided coverage for wrongful acts committed on or after the retroactive date of June 1, 2007 and before the termination of the policy on June 1, 2010. [Doc. No. 1-16, at pp. 7, 31-32, 46.] The policy states that: "[Endurance] shall pay Damages and Claim Expenses on behalf of the Insured resulting from any Claim first made against the Insured and reported to the Company in writing during the Policy Period or any applicable Extended Reporting Period for any Wrongful Act committed on or after the Retroactive Date and before the Policy terminates." [Doc. 1-16, at p. 46.] In addition, the policy states that Endurance "shall have the right and duty to defend, any Claim against the Insured, to which this Policy applies, even if any of the allegations of the Claim are groundless, false, or fraudulent." [Doc. 1-16, at p. 46.]

The policy includes a number of exclusions. At least three of these exclusions are relevant to the issues raised in this action: First, the application exclusion states in part as follows: "[A]ny claim or lawsuit . . . arising from any fact, circumstance, act,

error or omission disclosed or required to be disclosed in response to Question 9, 10 and/or 11 [of the insurance application], is hereby expressly excluded from coverage under the proposed insurance policy." [Doc. No. 77-1, at p. 2.] Under Question 9, WFP was required to disclose all "claims, suits or proceedings (including . . . any civil, criminal, or regulatory action, or any complaint, investigation or proceeding related thereto) ... during the past five years." Question 10 required disclosure of any "fact, circumstance, incident, situation, or accident (including . . . any civil, criminal, or regulatory action, or any complaint, investigation or proceeding thereto) that may result in a claim." [Doc. No. 77-1, at p. 2.]

Second, the prior and pending exclusion reads in part as follows: "This Policy shall not apply . . . to any Claim based upon, arising from, or in consequence of . . . any written demand, litigation, proceeding, administrative action or hearing brought prior to or pending as of [June 1, 2009]. . . ." [Doc. No. 77-1, at p. 2.]

Third, the policy includes a specific exclusion for any claim "based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the Robert C. Phalen matter (the "Phalen claim") disclosed on the Endurance Claim Supplemental Application signed and dated on July 6, 2009" (the "Phalen exclusion"). [Doc. No. 77-3, at p. 95.]

***B. The Underlying Claims Against WFP.***

After the policy was issued, WFP reported a number of claims to Endurance. These claims generally alleged that WFP and its representatives were negligent, failed to investigate and conduct proper due diligence on certain investment recommendations, and made misrepresentations and omissions of material information when recommending investments (the "underlying claims"). Many of these underlying claims are or were the subject of arbitrations before the Financial Industry Regulatory Authority ("FINRA"). [Doc. No. 77-3, at p. 95-96.]

On March 11, 2010, Endurance agreed to defend three of the underlying claims by Jon Kimler, John Sothras, and Jaimie Davis under a reservation of rights. Attorney

Brandon Reif was appointed by Endurance to represent WFP's interests in these matters. In letters to WFP dated March 11, 2010, Endurance advised that Mr. Reif "shall represent the Insured's interests in the defense of [these] matter[s] and [he] will have no involvement in any coverage issues." [Doc. No. 76-2, at Exh. 18-20, at p. 4.] Because of the $50,000 SIR, Endurance instructed Mr. Reif to send his bills directly to WFP until the SIR was exhausted. When the $50,000 SIR was exhausted, Mr. Reif was instructed to send his invoices directly to Endurance for payment. [Doc. No. 76-2, at Exh. 18-20, at p. 4.]

Even after the $50,000 SIR was exhausted, WFP claims that Mr. Reif's firm continued to send invoices to WFP for payment, and Endurance never paid any of the costs of WFP's defense. [Doc. No. 76-33, Schooler Decl., at p. 2.] On November 16, 2010, Endurance denied coverage of all of the underlying claims pending at that time based on certain provisions of the policy, including the Phalen exclusion. [Doc. No. 1-14, at pp. 17-45; Doc. No. 77-3, at p. 96; Doc. No. 76-33, Schooler Decl., at p. 2.]

### *C. First Insurance Coverage Action: Interpleader Complaint in the Central District of California.*

On February 16, 2011, Endurance filed an interpleader Complaint in the United States District Court for the Central District of California against the WFP defendants and many of the individual claimants who were pursuing the underlying claims against WFP. [Doc. No. 1-15, at p. 1, 11-19; Doc. No. 79-3, Hosp Decl., at p. 4.] In this action, Endurance was represented by Attorney Phillip Hosp, and WFP was represented by Attorney Stephen Treuer. [Doc. No. 76-1, at p. 6.] Mr. Reif continued to represent WFP's interests in the underlying claims that were being adjudicated by FINRA.

In the interpleader Complaint, Endurance claimed it had various defenses to coverage and alleged that the relief sought by the claimants in the underlying claims exceeded $18,000,000 and was far in excess of the $1 million aggregate limit of liability under the policy. [Doc. No. 77-3, at p. 96.] Endurance requested that it be allowed to deposit the $1 million aggregate limit of liability into the Court's registry

so that WFP and the claimants could litigate their respective rights to the $1 million. [Doc. No. 77-3, at pp. 96-97; Doc. No. 70-3, at pp. 9, 36-37.] Endurance also sought an injunction restraining the parties from "instituting or prosecuting any proceeding other than the arbitrations, that would affect the policy, pending further order of [the] Court." [Doc. No. 77-3, at p. 97, Doc. No. 70-3, at p. 36.] According to WFP, the interpleader Complaint referenced twenty-one underlying arbitrations and/or claims. [Doc. No. 70-1, at p. 22; Doc. No. 70-3, at pp. 21-35.]

WFP filed a Motion to Dismiss arguing that the Complaint in interpleader was inappropriate under the circumstances, because Endurance was actually seeking declaratory relief. According to WFP, Endurance was really seeking a determination that it had no duty to defend or indemnify WFP with respect to the underlying claims. [Doc. No. 77-3, at p. 97.] On June 27, 2011, the District Court for the Central District of California agreed with WFP and signed an Order granting WFP's Motion to Dismiss. The Order dismissed the interpleader Complaint with prejudice, stating that Endurance's "duty to defend under the terms of the Policy is unambiguous." [Doc. No. 77-3, at p. 99.] However, it appears that the action was not actually dismissed with prejudice from the Central District's docket until July 21, 2011. [Doc. No. 76-32, Treuer Decl., at p. 4.]

Endurance appealed the Central District's dismissal of the interpleader Complaint. [No. 11-56351.] On January 23, 2012, in its opening brief on appeal, Endurance argued that dismissal of the interpleader Complaint was unwarranted, because it does not have a duty to defend and did not interplead any duty to defend. [Doc. No. 70-6, at pp. 20-23.]

### *D. __Second Coverage Action for Declaratory Relief and Rescission ("the Instant Action").__*

#### *1. __The Complaint.__*

On July 25, 2011, shortly after the interpleader Complaint was dismissed by the Central District, Endurance filed a new Complaint against WFP in San Diego County

Superior Court. This new Complaint cites the same insurance policy at issue in the prior interpleader action in the Central District of California. Unlike the interpleader action, the individual claimants were not named in this new Complaint. However, some or all of the same claimants and underlying claims are referenced in the new Complaint as part of the coverage dispute between Endurance and WFP. [Doc. No. 1-16, at p. 7; Doc. No. 70-3, at p. 17.] On November 9, 2011, the new action in San Diego Superior Court was removed to this Court based on diversity of citizenship. [Doc. No. 1, at p. 4.]

The new Complaint includes causes of action for declaratory relief and rescission against WFP. In its cause of action for declaratory relief, Endurance seeks a declaration that coverage of the underlying claims is precluded by: (1) the express terms and conditions of the policy and WFP's application for insurance; (2) the public policy against indemnification of restitution or disgorgement; and (3) the public policy against insurance coverage for non-fortuitous losses, *i.e.*, the "known loss" doctrine. For example, Endurance contends that coverage of the underlying claims is precluded under the "known loss" doctrine, because WFP was aware of the facts and circumstances leading to some or all of the underlying claims prior to the inception of the policy period. [Doc. No. 1-16, at p. 25.]

In the cause of action for rescission, Endurance asserts that it is entitled under California law to rescind the policy, rendering it void *ab initio*. According to Endurance, WFP submitted its application for insurance on July 6, 2009 and knew about but failed to disclose pre-existing or potential claims. In its decision to issue the subject insurance policy, Endurance alleges that it justifiably but detrimentally relied on misinformation provided by WFP in its application. For example, plaintiff alleges defendants were aware of negative information concerning certain investments that could give rise to claims under the policy. However, Endurance alleges WFP failed to disclose potential claims involving these investments in its insurance application. [Doc. No. 1-16, at p. 26-28.]

### 2. ***WFP's Cross Complaint.***

On October 11, 2012, WFP filed a Cross-Complaint against Endurance and Lexington Insurance Company ("Lexington"). [Doc. No. 1-3, at p. 2.] The Cross-Complaint includes causes of action against Endurance and Lexington for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory relief. [Doc. No. 1-3, at p. 2-3.] Lexington is not involved in the pending motions but provided insurance coverage to WFP for the policy period June 1, 2008 to June 1, 2009, just prior to inception of the Endurance policy. [Doc. No. 1-3, at p. 5-6.]

The Cross-Complaint alleges that Endurance breached its obligations under the policy by "(1) failing and refusing to provide a defense . . . [of the underlying claims]; (2) unreasonably asserting the application of multiple SIRs; (3) failing to engage in good faith settlement negotiations in the Underlying Actions; (4) failing to properly and fairly investigate and evaluate its coverage duties with regard to the [underlying claims]; and (5) filing its Interpleader Action, thereby turning its insured into an adverse claimant to policy benefits." [Doc. No. 1-3, at p. 28.] For these and other reasons, the Cross-Complaint also alleges that Endurance acted in bad faith. [Doc. No. 1-3, at 29.]

### E. ***Facts and Circumstances Leading to the Instant Motion to Disqualify Endurance's Litigation Counsel in this Action.***

The facts and circumstances leading to the instant Motion to Disqualify Plaintiff's Counsel occurred during the course of the prior interpleader coverage action in the Central District while WFP's Motion to Dismiss was pending and scheduled to be heard on June 27, 2011. [Doc. No. 77-2, at p. 95.] While this Motion to Dismiss was pending, Endurance served WFP with an early request for production of documents seeking access to every communication WFP had with all of its clients relating to the purchase, sale or holding of any securities between July 1, 2004 and April 19, 2011. [Doc. No. 76-12, at p. 10.]

/ / /

Believing Endurance's early document request was overly broad, WFP objected and did not produce any documents. [Doc. No. 76-1, at p. 9.] As a result, Mr. Hosp threatened to file a motion to compel on behalf of Endurance, and the parties became embroiled in a discovery dispute. [Doc. No. 76-1, at p. 9-10.] Although Mr. Hosp filed Endurance's Motion to Compel on June 27, 2011, it was taken off calendar for failure to satisfy meet and confer requirements. Mr. Hosp then undertook discussions with Mr. Treuer, WFP's litigation counsel in that action, to resolve the dispute. [Doc. No. 76-1, at p. 10.]

Almost one year later in May of 2012 and long after the first coverage action was dismissed, attorneys representing WFP in the current coverage action were reviewing attorney billing records and discovered that on June 27, 2011, the same date Endurance's Motion to Compel in the prior action was taken off calendar for failure to meet and confer, Mr. Hosp was seeking access to WFP's documents from Mr. Reif. A paralegal at Mr. Reif's firm made the following time entry on June 27, 2011: "Analysis of documents produced by Claimants and Respondents in all WFP Arbitrations for documents to be provided at the request of Endurance lawsuit participants." [Doc. No. 76-24, at p. 5.]

In response to an inquiry by WFP's counsel in the current coverage action, Mr. Reif confirmed that in the Summer of 2011, "Endurance's counsel" requested and received a set of discovery from "the then-open cases" that Mr. Reif was defending for WFP. He said he was not "told the purpose" of the production but indicated that Mr. Treuer knew about the request and had also asked for certain documents which were provided pursuant to his request. [Doc. No. 76-25, at p. 2.] A time entry for Mr. Reif dated July 7, 2011 also states that he had a discussion with Mr. Hosp about making deposition transcripts available for viewing at his office. [Doc. No. 76-24, at p. 5.]

On July 8, 2011, around the same time Mr. Hosp was communicating with Mr. Reif to obtain access to WFP's documents and deposition transcripts, Mr. Hosp

also met in person with Mr. Treuer and reached a resolution of the discovery dispute in the interpleader insurance coverage action. WFP agreed to produce a narrow set of documents within two weeks: "All complaints and demands, including any responses thereto, and all communications between WFP and its clients that made those complaints and demands" for the period January 1, 2006 through April 19, 2011. The parties also agreed to a stipulation that would protect the privacy interests involved. [Doc. No. 76-32, Treuer Decl., at p. 4; Doc. No. 76-17, at p. 2.]

As noted above, the Central District dismissed the interpleader Complaint from its docket with prejudice on July 21, 2011, the day before WFP was scheduled to produce documents in response to Endurance's early document request. [Doc. No. 77-3, at p. 99; Doc. No. 77-3, at p. 99; Doc. No. 76-32, Treuer Decl., at p. 4.] In light of the dismissal, Mr. Treuer did not produce any documents to Endurance on behalf of WFP. [Doc. No. 76-32, Treuer Decl., at p. 4.] In a Declaration submitted in support of WFP's Motion to Disqualify Counsel, Mr. Treuer has stated that he also did not authorize Mr. Reif to release any of WFP's documents to Mr. Hosp. Mr. Treuer's Declaration further states that to the best of his recollection he was never informed that Mr. Hosp had directly contacted Mr. Reif to obtain access to WFP's documents. [Doc. No. 76-32, Treuer Decl., at p. 4-5.]

Mr. Hosp's access to WFP's documents through Mr. Reif during the prior interpleader action was discovered and became significant in the current coverage action when Mr. Hosp indicated during a discovery conference that he wanted to use certain documents to oppose WFP's Motion for Partial Summary Judgment. He requested that WFP's current litigation counsel, Mr. Hilding, stipulate to the authenticity of these documents. [Doc. No. 76-26, at 1-6.] Although Mr. Hilding was "initially puzzled" as to how Mr. Hosp obtained access to these documents, he eventually stipulated to their authenticity so that they could be submitted as exhibits in support of Endurance's Opposition to WFP's Motion for Partial Summary Judgment.

[Doc. No. 76-1, at p. 12.][1] Mr. Reif believed these documents should remain confidential. However, WFP's counsel in this action apparently did not make a request to have them filed with the Court under seal. [Doc. 79-3, Hosp. Decl., at p. 5.]

***Discussion***

In the Motion to Disqualify Counsel, WFP argues that this Court should preclude Mr. Hosp and his law firm from representing Endurance in this action, because he initiated improper contacts with Mr. Reif and induced him to breach his duty of loyalty and confidentiality to WFP, which has resulted in prejudice to WFP. According to defendants, Mr. Hosp had improper "ex parte" contacts with Mr. Reif without WFP's knowledge or consent, and as a result of these contacts, Mr. Hosp obtained "covert access" to WFP's "confidential" documents and was able to review "confidential" transcripts.

In Opposition to defendants' Motion, Endurance denies that Mr. Hosp induced Mr. Reif to breach his duty of confidentiality and loyalty to defendants. Endurance also denies that Mr. Hosp sought or obtained access to privileged or any other legally protected documents. In support of Endurance's Opposition, Mr. Hosp provided a Declaration with supporting evidence outlining his contacts with Mr. Reif during the relevant time period. According to Mr. Hosp, his contacts with Mr. Reif during the relevant time period only resulted in access to non-privileged, discoverable documents and transcripts.

---

[1] The question raised by WFP's counsel about the source of these documents was, at its core, a discovery dispute. Before filing this Motion to Disqualify Counsel, WFP's counsel wrote a letter to Endurance's counsel requesting to meet and confer but received no response. [Doc. No. 76-35, Hilding Decl., at p. 2.] Apparently, Endurance's counsel responded by letter, but the letter was not received because it was addressed incorrectly. [Doc. No. 79-3, Hosp Decl., at p. 2-3.] In any event, the letter did not provide a direct or complete response to the question that was raised about the source of the documents. [Doc. No. 81, Supp. Hosp Decl., at 2 and Exh. S.] "Under no circumstances may the parties satisfy the meet and confer requirement by exchanging written correspondence." CivLR 26.1(a). Any further discovery motions filed without satisfying the meet and confer requirements will be denied. In addition, the parties are directed to the procedures for resolving discovery disputes as set forth in Judge Crawford's "Chambers' Rules" which are accessible via the Court's website at www.casd.uscourts.gov.

In its Reply, WFP further argues that Mr. Hosp was not entitled to copies of the documents in Mr. Reif's possession, because they were produced to him by WFP for the purpose of defending the underlying claims that were adjudicated through FINRA and were produced in the connection with these arbitrations subject to confidentiality agreements. According to WFP, Endurance was not a party to these agreements and has not agreed to be bound by their terms.

***A. Applicable Law.***

"Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 426. Questions of privilege in a diversity action, including the attorney-client privilege, are governed by California law. Fed.R.Evid. 501.

Federal courts also apply state law in determining matters of disqualification. *In re County of Los Angeles*, 223 F.3d 990, 995 (2000). "A judge's authority to disqualify an attorney has its origins in the inherent power of every court in the furtherance of justice to control the conduct of ministerial officers and other persons in pending judicial proceedings." *Neal v. Health Net, Inc.*, 100 Cal.App.4th 831, 840 (2002). "The power is frequently exercised on a showing that disqualification is required under professional standards governing avoidance of conflicts of interest or potential adverse use of confidential information." *Responsible Citizens v. Superior Court*, 16 Cal.App.4th 1717, 1723–1724 (1993). "[D]isqualification is a drastic course of action that should not be taken simply out of hypersensitivity to ethical nuances or the appearance of impropriety." *Roush v. Seagate Technology, LLC*, 150 Cal.App.4th 210, 281 (2007).

"Motions to disqualify counsel present competing policy considerations. On the one hand, a court must not hesitate to disqualify an attorney when it is satisfactorily established that he or she wrongfully acquired an unfair advantage that undermines the integrity of the judicial process and will have a continuing effect on the proceedings before the court. [Citation omitted.] On the other hand, it must be kept in mind that

disqualification usually imposes a substantial hardship on the disqualified attorney's innocent client, who must bear the monetary and other costs of finding a replacement. A client deprived of the attorney of his choice suffers a particularly heavy penalty where, as appears to be the case here, his attorney is highly skilled in the relevant area of the law." *Gregori v. Bank of America*, 207 Cal.App.3d 291, 300 (1989).

"Additionally, as courts are increasingly aware, motions to disqualify counsel often pose the very threat to the integrity of the judicial process that they purport to prevent. [Citation omitted.] Such motions can be misused to harass opposing counsel [citation omitted], to delay the litigation [citation omitted], or to intimidate an adversary into accepting settlement on terms that would not otherwise be acceptable. In short, it is widely understood by judges that 'attorneys now commonly use disqualification motions for purely strategic purposes. . . .' [Citations omitted.]" *Id.* at 300-301. Therefore, disqualification motions "should be subjected to particularly strict judicial scrutiny." *Optyl Eyewear Fashion Int'l Corp. v. Style Cos.*, 760 F.2d 1045, 1050 (9th Cir.1985).

***B. Alleged Breach of the Attorney-Client Privilege.***

Without specific evidentiary support, WFP argues that Mr. Hosp and his firm should be disqualified from representing Endurance in this action, because Mr. Hosp "induced" Mr. Reif to breach his duty of loyalty and confidentiality to WFP, and as a result, Mr. Hosp gained access to "attorney-client confidences" through Mr. Reif. [Doc. No.76-1, at p. 2, 22.] WFP would have this Court presume a violation of the attorney-client relationship by Mr. Reif based on his direct communications with Mr. Hosp; the "conflicted relationship" between Endurance and WFP; and the fact that Mr. Reif provided Mr. Hosp with documents stamped "confidential." [Doc. No. 76-1, at p. 22-23.]

Under California law, evidentiary privileges, including the attorney-client privilege, are governed by statute. *HLC Properties, Ltd. v. Superior Court*, 35 Cal.4th 54, 59 (2005). "The party claiming the privilege has the burden of establishing the

preliminary facts necessary to support its exercise, i.e., a communication made in the course of an attorney-client relationship." *Costco Wholesale Corp. v. Superior Court*, 47 Cal. 4th 725, 733 (2009).

Under California Evidence Section 952, the attorney-client privilege applies to confidential communications between a client and a lawyer "in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted, and includes a legal opinion formed and the advice given by the lawyer in the course of that relationship." Cal. Evid. Code 952. Documents or evidence that are otherwise discoverable do not become privileged simply because they are transmitted to counsel. *Costco v. Superior Court,* 35 Cal. 4th at 735; *Wellpoint Health Networks, Inc. v. Superior Court*, 59 Cal.App.4th 110, 119 (1997).

In support of the claim that Mr. Hosp obtained access to privileged documents or information from Mr. Reif, WFP refers to internal WFP e-mails stamped "confidential" that were clearly in Mr. Hosp's possession, since he submitted them as exhibits to Endurance's Opposition to WFP's Motion for Partial Summary Judgment. [Doc. No. 76-1, at p. 11; Doc. No. 37-2, Exhibits F-G, I-N & P.] However, these documents are not communications between WFP and its counsel. Documents are not protected from disclosure by the attorney-client privilege simply because they are transmitted to an attorney and stamped "confidential."

In support of Endurance's Opposition to WFP's Motion to Disqualify Counsel, Mr. Hosp submitted a Declaration stating under penalty of perjury that he did not have access to any attorney-client communications or any other legally protected information through Mr. Reif. [Doc. No. 79-3, at p. 5] WFP has not submitted any convincing evidence that disputes the statements made by Mr. Hosp in his Declaration. Instead,

WFP would have this Court simply presume based on the circumstances that Mr. Hosp induced Mr. Reif to provide him with documents or information protected by the attorney-client privilege. Based on the evidence submitted by the parties, and for the reasons outlined more fully below, the facts and circumstances simply do not justify a presumption that the attorney-client privilege was breached. Nor is there any basis for this Court to conclude that Mr. Hosp should be disqualified from representing Endurance in this action because he allegedly induced Mr. Reif to breach his duty of confidentiality and loyalty to WFP or had access to attorney-client privileged communications from Mr. Reif.

***C. Endurance's Access to WFP's "Confidential" Documents.***

Referring to the same "confidential" e-mails referenced above, WFP also argues that Mr. Hosp should be disqualified from representing Endurance because he obtained "covert access" to WFP's "confidential" documents from Mr. Reif. [Doc. No. 76-1, at p. 11; Doc. No. 37-2, Exhibits F-G, I-N & P.] All of these "confidential" e-mails indicate that between December 2, 2008 and June 30, 2009, WFP was aware of negative information about certain investments that ultimately lead to the filing of the underlying claims against WFP. In its Opposition to defendant's Motion for Partial Summary Judgment, Endurance cited these documents in support of its argument that it had no duty to defend WFP, because Endurance had a right to rescind the subject policy *ab initio* based on WFP's failure to disclose potential claims in its application for insurance. [Doc. No. 37, at pp. 15-16.] The District Court rejected this argument "even assuming Endurance has a legal right to assert rescission." The District Court reasoned that "the duty to defend turns upon the 'facts known by the insurer at the inception of a third party lawsuit' not on the ultimate issue of coverage." According to the District Court, Endurance did not meet its burden to demonstrate that at the time it made its coverage decision there was no potential for coverage under the subject policy. [Doc. No. 95, Order Granting in Part WFP's Mot. for Partial Summ. J., at p. 11.]

In other words, WFP prevailed on its Motion for Partial Summary Judgment on the issues of Endurance's duty to defend and right to rescind the subject insurance policy. As a result, this Court cannot conclude that Endurance acquired any unfair advantage or that WFP suffered any prejudice because Endurance had access to the subject e-mails. In any event, these e-mails would have eventually been discoverable even if Mr. Hosp did not obtain access to them, because they meet the relevance standard of Federal Rule of Procedure 26(b).[2]

Endurance argues there is no basis to grant WFP's Motion to Disqualify Counsel, because nothing precluded Endurance from obtaining access to documents and information related to the defense of the underlying claims from Mr. Reif, even if they were designated "confidential." Endurance also argues that the evidence contradicts WFP's contention that Mr. Hosp improperly obtained "confidential" documents from Mr. Reif. This Court agrees. While the exact source of the documents in question is still somewhat unclear based on the evidence submitted by the parties, there is simply no evidence that they were obtained improperly.

"When an insurer provides an unconditional defense for its insured, the insured and the carrier share the same goal–minimizing or eliminating liability in the third party action–and no conflict of interest inhibits the ability of one lawyer to represent both the insurer and the insured. [Citations omitted.] But where the carrier questions the availability of coverage and provides a defense in the third party action subject to a reservation of rights, a conflict exists–because the insured's goal is coverage, which flies in the face of the insurer's desire to avoid its duty to indemnify. [Citation omitted.] Since it is unavoidable that, in the course of investigating and preparing the insured's defense in the third party action, the insured's attorney will come upon information relevant to a coverage issue, it is impossible for the carrier's attorney to represent the insured . . . and the insured is entitled to independent counsel." *Rockwell*

---

[2] Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ."

*Int'l Corp. v. Superior Court (Los Angeles)*, 26 Cal.App.4th 1255, 1262-1263 (1994); Cal. Civ. Code § 2860(a)&(b). A conflict may exist between the insurer and the insured "when an insurer reserves its rights on a given issue and the outcome of that coverage issue can be controlled by counsel first retained by the insurer for the defense of the claim. . . ." Cal. Civ. Code 2860(b).

"When independent counsel has been selected by the insured, it shall be the duty of that counsel and the insured to disclose to the insurer all information concerning the action ***except privileged materials relevant to coverage disputes***, and timely to inform and consult with the insurer on all matters relating to the action. Any claim of privilege asserted is subject to in camera review in the appropriate law and motion department of the superior court. Any information disclosed by the insured or by independent counsel is not a waiver of the privilege as to any other party." Cal.Civ.Code § 2860(d) (emphasis added).

As noted above, Endurance originally agreed to defend three of the underlying claims against WFP under a reservation of rights. At this time, it also appointed Mr. Reif to defend these three underlying claims. Recognizing the conflict this created, Endurance stated in its letters to WFP dated March 11, 2010 that Mr. Reif "shall represent the Insured's interests in the defense of [these] matter[s] and [he] will have no involvement in any coverage issues."[3] [Doc. No. 76-2, at Exh. 18-20, at p. 4.] Thus,

---

[3] The conflict between Endurance and WFP is obvious and deep-seated based on the common factual allegations between the underlying claims and the allegations in the instant insurance coverage action. Endurance and the underlying claimants both seek to prove WFP was aware of facts and circumstances leading to the underlying claims but did not disclose this information when it should have. The conflict is also evident in the highly litigious and contentious nature of the relationship between the parties in this action. In addition to the fact that this is the second insurance coverage action between the parties, there are currently four voluminous and acrimonious motions for the Court to resolve. Currently pending motions include: (1) defendants' Motion to Stay [Doc. No. 70]; (2) defendants' Motion to Disqualify Counsel [Doc. No. 76]; (3) plaintiff's Motion for Sanctions [Doc. No. 80]; and (4) the parties' Joint Motion for Determination of Discovery Dispute [Doc. No. 77]. In the Joint Motion for Determination of Discovery Dispute, Endurance seeks an order compelling WFP to produce documents in response to 32 different discovery requests, as well as monetary sanctions to recover the cost of bringing the Motion. [Doc. No. 77-1, at p. 3.] A total of 629 pages were filed in connection with the Motion to Stay;

Endurance clearly viewed Mr. Reif's role as that of independent counsel to represent WFP, and there is nothing to indicate WFP disagreed with the terms of this appointment or sought to select its own independent counsel who had no prior relationship with Mr. Reif or Endurance.[4]

In his independent role as WFP's defense counsel handling the underlying claims, Mr. Reif had a duty to "disclose to the insurer all information" concerning the underlying claims so long as the information was not "privileged materials relevant to coverage disputes." Cal. Civ. Code § 2860(d). Indeed, if independent counsel representing the insured "keeps the insurer 'in the dark' by failing to comply with the section 2860 duties until it is too late to remedy the situation," causing damage to the insurer, the insurer may have a cause of action against the attorney for breach of its statutory duties. *Assurance Co. of America v. Haven*, 32 Cal.App.4th 78, 89 (1995).

Under these circumstances, this Court must reject WFP's suggestion that because Endurance's interpleader action was pending against WFP in the Central District, Mr. Reif was required to obtain approval from or to inform WFP's litigation counsel, Mr. Treuer, before releasing any unprivileged documents to Mr. Hosp related to the underlying claims. Nor could Mr. Treuer prevent Mr. Reif from releasing any such

---

710 pages with the instant Motion to Disqualify Counsel; 188 pages with the Motion for Sanctions; and 384 pages with the Joint Motion for Determination of Discovery Dispute.

[4] WFP unconvincingly attempts to show that Mr. Reif had an incentive to provide Mr. Hosp with "covert access" to WFP's attorney-client privileged and confidential information based on an existing relationship between Endurance and Mr. Reif and his law firm. This evidence indicates that Endurance appointed Mr. Reif to defend at least one other insured. However, without more, this connection between Mr. Reif and Endurance does not constitute convincing evidence of any wrongdoing by Mr. Reif. WFP also submitted evidence showing that Mr. Reif's law firm previously employed Shimon Getler. Mr. Getler is employed as claims counsel for Endurance and was assigned to handle WFP's claims for coverage under the subject insurance policy. [Doc. No. 76-1, at pp. 7-8, 13-14.] As clarification, WFP submitted evidence with its Opposition which shows that Mr. Getler worked in the New York office of Mr. Reif's firm from December 2001 to May 2004 and did not know Mr. Reif when he worked there. Nor was Mr. Getler employed by Mr. Reif's firm during its representation of WFP, which began in December of 2009. [Doc. No. 79, at p. 17.] In any event, Mr. Getler's former relationship with Mr. Reif's firm is not a basis to disqualify Mr. Hosp or his law firm.

documents to Mr. Hosp because of the pending discovery dispute in the interpleader action. It is true, as noted above, that in a letter dated November 16, 2010 Endurance denied coverage for all of the underlying claims that were pending at that time and later denied other claims [Doc. No. 77-3, at p. 96; Doc. No. 76-33, Schooler Decl., at p. 2; Doc. No. 83-6, Supp. Schooler Decl., at p. 1]. However, insurance coverage for the underlying claims and Endurance's duty to defend, which is broader than the duty to indemnify,[5] are still at issue between the parties to this day, as evidenced by the allegations in the pleadings, WFP's Motion for Partial Summary Judgment, and the District Court's Order Granting in Part WFP's Motion for Partial Summary Judgment. [Doc. No. 95.] As a result, this Court can only conclude that Mr. Reif's duty to disclose information about the underlying claims to Endurance under Section 2860(d) is a continuing one, regardless of any pending insurance coverage litigation.

///

---

[5] In *Montrose Chemical Corporation v. Superior Court*, 6 Cal.4th 287 (1993) ("*Montrose I*"), the California Supreme Court reiterated the long-standing principle that a liability insurer has a duty to defend if a claim against its insured creates a potential for indemnity under the policy. *Id.* at 295. An insurer's duty to defend is determined "in the first instance" by comparing the terms of the policy to the allegations against the insured and to any extrinsic facts which may "reveal a possibility that the claim may be covered by the policy." *Id.* "[E]vidence extrinsic to the underlying complaint can defeat as well as generate a defense duty." *Id.* at 291. Because the insurer's duty to defend is not based on a final adjudication of coverage under the policy but on facts known at the inception of the claim, the insurer must defend some claims "where liability under the policy ultimately fails to materialize." *Id.* at 295. "Necessarily, an insurer will be required to defend a suit where the evidence suggests, but does not conclusively establish, that the loss is not covered." Therefore, it has become axiomatic that an insurer's duty to defend is broader than the duty to indemnify. *Id.* at 295, 299. To prevail in a declaratory relief action seeking a determination as to whether an insurer has a duty to defend, "the insured must prove the existence of a *potential for coverage*, while the insurer must establish *the absence of any such potential*. In other words, the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*. Facts merely tending to show that the claim is not covered, or may not be covered, but are insufficient to eliminate the possibility that resultant damages (or the nature of the action) will fall within the scope of coverage, therefore add no weight to the scales." *Montrose I*, 6 Cal.4th at 300. Thus, to escape the duty to defend altogether, the insurer must present evidence sufficient to establish "that the underlying claim cannot come within the policy coverage by virtue of the scope of the insuring clause or the breadth of an exclusion." *Id.* at 301. Even if an insurer is able to show there is no potential for coverage, it is only relieved of the duty to defend prospectively, not retroactively. *Haskel, Inc. v. Superior Court (Aetna)*, 33 Cal.App.4th 963, 977 (1995).

In addition, evidence submitted by Endurance is more than enough to show that Mr. Hosp did not seek or receive from Mr. Reif anything more than he was entitled to under the law. First, the evidence shows that even before the first coverage action was filed in the Central District, Mr. Hosp was in contact with Dave Lenny, WFP's original coverage counsel, who provided him with documents "solely for the purpose of determining coverage issues" and also offered access to numerous other claims documents. Mr. Lenny's letter to Mr. Hosp dated November 16, 2010 states that WFP produced "tens of thousands of pages, possibly up to a total of 100,000 pages" to FINRA in connection with the underlying arbitration claims. Mr. Hosp was advised to make arrangements if he wanted to obtain copies of these documents. Mr. Lenny further advised Mr. Hosp that "there are additional files at the offices of [WFP's] attorneys" and indicated these would be made available to Endurance in due course. [Doc. No. 79-3, Hosp. Decl., at p. 3; Doc. No. 79-1, Ex. D to Hosp Decl., at pp. 18-20.]

Second, the evidence shows that Mr. Hosp wrote a letter to Mr. Reif dated June 22, 2011, while the subject discovery dispute was ongoing, and requested access to "non-privileged documents received or produced" in several of the underlying arbitrations. Mr. Reif's office subsequently produced "non-privileged documents" in response to this request, and the Bates stamps on the documents indicate they were produced and received in the underlying arbitrations. [Doc. No. 79-3, Hosp Decl., at p. 4.] Mr. Reif also stated in his Declaration that he received the same or similar documents from a number of claimants in the underlying arbitrations in response to discovery requests made to them during the prior interpleader action. [Doc. No. 79-3, Hosp Decl., at p. 4-5.] In addition, Mr. Hosp stated in his Declaration that he reviewed "non-privileged transcripts from a FINRA examination at Mr. Reif's office." Most importantly, he has stated under penalty of perjury that he "did not ask for, or have access to, any attorney-client communications or any other legally protected information of the WFP parties" through Mr. Reif. [Doc. No. 79-3, at p. 5.]

/ / /

Pursuant to Section 2860(d), WFP was not entitled to withhold documents related to the underlying arbitration claims from Endurance simply by marking them "confidential." Based on Section 2860(d), it is also clear that WFP could not withhold documents related to the underlying arbitration claims simply because they included information that is relevant to coverage issues or because the documents included information that is damaging to WFP's position on coverage. Nor could WFP withhold these documents from Endurance simply because they included third party information. Whether these documents should have been provided to Mr. Hosp subject to confidentiality agreements that were executed in the underlying arbitrations is between Mr. Reif and Mr. Hosp and not an issue for this Court's consideration. As set forth in Section 2860(d), WFP was only entitled to withhold documents concerning the underlying claims and arbitrations if they were protected by the attorney-client privilege.

## ***Conclusion***

Based on the foregoing, there is simply no evidence from which this Court could conclude that Mr. Hosp acquired any information from Mr. Reif about WFP or the underlying claims that he was not entitled to receive under California law. As a result, this Court cannot conclude that Mr. Hosp and/or his law firm should be disqualified from representing Endurance because Mr. Hosp "wrongfully acquired an unfair advantage that undermines the integrity of the judicial process and will have a continuing effect on the proceedings before the court." *Gregori*, 207 Cal.App.3d at 300. Therefore, this Court finds that WFP's Motion to Disqualify Counsel must be DENIED.

IT IS SO ORDERED.

Date: March 29, 2013

KAREN S. CRAWFORD
United States Magistrate Judge